IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| PAUL ANTHONY PEREZ, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| V. | § | CIVIL ACTION NO. H-14-0954 |
| | § | |
| JPMORGAN CASE BANK, N.A., METLIFE | § | |
| HOME LOANS, LLC, and FIRST HORIZON | § | |
| HOME LOANS, | § | |
| | § | |
| Defendants. | § | |

## MEMORANDUM AND RECOMMENDATION GRANTING
## DEFENDANTS' MOTION TO DISMISS

Pending in this case that has been referred to the Magistrate Judge pursuant to 28 U.S.C. 636(b)(1)(B) is Defendant JPMorgan Chase Bank, N.A.'s and MetLife Home Loans, LLC's Motion to Dismiss (Document No. 4). In that motion, Defendants JPMorgan Chase Bank, N.A. ("JPMorgan") and MetLife Home Loans, LLC ("MetLife"), the only Defendants who have appeared in this case, seek the dismissal of Plaintiff's claims pursuant to FED. R. CIV. P. 12(b)(6). To this date, Plaintiff has not filed a response to the motion.

Having considered the Motion to Dismiss, the absence of a response, and the allegations in Plaintiff's current pleading, the Magistrate Judge RECOMMENDS, for the reasons set forth below, that Defendants' Motion to Dismiss (Document No. 4) be GRANTED, and that Plaintiff's claims against Defendants JPMorgan and MetLife be DISMISSED pursuant to Fed. R. Civ. P 12(b)(6) for failure to state a claim.

## I.     Background and Procedural History

On March 13, 2014, Plaintiff Paul Anthony Perez (Perez) filed an Original Petition in the 270th Judicial District Court of Harris County, Texas, Cause No. 201413434, against JPMorgan Chase Bank, N.A. (JPMorgan), MetLife Home Loans L.L.C. (MetLife), and First Horizon Home Loans, challenging their right to foreclosure on his property located at 519 W. 30th Street, Houston, Texas 77018 ("the Property").   Defendants JPMorgan and MetLife timely removed the case to this Court on the basis of diversity jurisdiction, and promptly filed a Motion to Dismiss pursuant to Fed. R. Civ. P 12(b)(6) for failure to state a claim (Document No. 4). First Horizon Home Loans has not made an appearance in this case and there is no evidence in the record that it has been served.

In their Motion To Dismiss, JPMorgan and MetLife maintain that Perez has not stated a claim against them to which relief may be granted because: (1) any claim he has asserted against them pursuant to Article XVI §50(a)(6) (A)-(Q) of The Texas Constitution is barred by limitations, (2) he has not stated a viable breach of contract given the terms of the Security Instrument at issue as well as his own allegations which establish his own prior, material breach of the Security Instrument, and (3) there are no allegations that would support a claim for equitable estoppel.

## II.     Rule 12(b)(6) Standard of Review

Rule 12(b)(6) provides for dismissal of an action for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on it face." *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S.Ct. 1937, 1949 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is said to be plausible if the complaint contains

"factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 129 S.Ct. at 1949. Plausibility will not be found where the claim alleged in the complaint is based solely on legal conclusions or a "formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555. Nor will plausibility be found where the complaint "pleads facts that are merely consistent with a defendant's liability" or where the complaint is made up on "naked assertions devoid of further factual enhancement." *Iqbal*, 129 S.Ct. at 1949 (quoting *Twombly*, 550 U.S. at 557). Plausability, not sheer possibility or even conceivability is required to survive a Rule 12(b)(6) motion to dismiss. *Twombly*, 550 U.S. at 556-557; *Iqbal*, 129 S.Ct. at 1950-1951.

In considering a Rule 12(b)(6) motion to dismiss, all well pleaded facts are to be taken as true, and viewed in the light most favorable to the plaintiff. *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974). But, as it is only *facts* that must be taken as true, the court may "begin by identifying the pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." Iqbal*, at 1950. It is only then that the court can view the well pleaded* facts, *"assume their veracity and [] determine whether they plausibly give rise to an entitlement to relief." Iqbal*, at 1950.

III.    Discussion

In the Original Petition he filed in state court prior to removal, Perez alleges in the background "facts" section as follows:

> On or about December 11th, 2006 PAUL ANTHONY PEREZ purchased the residential property located at 519 W. 30th Street, Houston Texas 77018 for $125,000.00. Approximately SIX (6) months later on June 21st, 2007, Mr. Perez obtained a Texas Home Equity Refinance or "TEXAS CASHOUT LOAN" in the amount of $276,000.00 with a note payable to HOMECOMINGS FINANCIAL LLC

F/K/A HOMECOMINGS FINANCIAL NETWORK INC.   Approximately 14 months later, on August 26th, 2008, Mr. Perez obtained another Texas Home Equity Refinance or "TEXAS CASHOUT LOAN" in the amount of $288,000.00 with a note payable to FIRST HORIZON HOME LOANS INC. Mr. Perez was induced to obtain cash at closing through a simplified mortgage qualification program offered through First Horizon Home Loans Inc. FIRST HORIZON HOME LOANS INC. knowingly originated the loan based on an artificially inflated property value. The new loan was a note which contained a higher than market interest rate. The new loan also allowed for the waiver of an escrow account which would have contained funds to pay home owners insurance premiums and property taxes. The higher interest rate and the waiver of the escrow account created a high risk for loss of the property and created a detrimental situation for Mr. Perez as a homeowner. The extension of credit was given upon the condition that Mr. Perez was required to pay off the additional creditors not attached to the property.

        In 2010, Mr. Perez was unable to make a timely payment of the property taxes to Harris County.  Metlife Home Loans LLC paid the taxes and implemented an escrow account and attached onto the loan. The new calculated payment to cover the tax payment and the start of the new escrow account was excessively and unreasonably high, exceeding double the previous payment. Metlife Home Loans LLC also claimed that there was no hazard insurance on the property and attached a hazard insurance policy on the property. The cost of the insurance was excessively and unreasonably high and was also calculated and attached to the loan. Mr. Perez had always maintained hazard insurance on the property and was unable to get the policy removed or recalculated. In September, 2011 Mr. Perez was unable to make timely payments of the higher calculated payment. After falling behind on payments, Mr. Perez began to receive solicitation offers directly from Metlife Home Loans LLC informing him of options available to assist him bringing his mortgage loan current. Mr. Perez began to have phone conversations with representatives from Metlife Home Loans LLC who advised that they would no longer accept payments in any form, but instead induced him to apply for a Loan Modification. Mr. Perez received an application for modification which he promptly completed and returned to Metlife Home Loans LLC. After some weeks and months had passed representatives for Metlife Home Loans LLC advised Mr. Perez that the loan was not eligible for modification since it was a Texas Home Equity Loan and could not be modified per The Texas Constitution art. XVI § 50(a)(6)(A)(Q). Throughout the course of applying for modification and waiting for response to the application, Mr. Perez was advised that the loan had been assigned to JPMORGAN CHASE BANK N.A. and that JPMORGAN CHASE BANK N.A. would not accept payment in any form. Mr. Perez continued to fall further behind on the Mortgage Loan, all while accruing more interest and fees. Mr. Perez again received an application for modification which he promptly completed and returned to JPMORGAN CHASE BANK N.A. After some weeks and months had passed representatives for JPMORGAN CHASE BANK N.A.

4

advised Mr. Perez that the loan was not eligible for modification since it was a Texas Home Equity Loan and could not be modified per The Texas Constitution art. XVI § 50(a)(6)(A)(Q). In late 2012 and through the summer of 2013, Mr. Perez attempted to complete a short sale of the property. Mr. Perez entered into a contract for sale in the amount of $315,000.00 and advised JPMORGAN CHASE BANK N.A. of the agreement and proposed short sale. The property was appraised for a value of $315,000.00 by a certified appraiser in July of 2013. JPMORGAN CHASE BANK N.A. had obtained a value of $322,000.00 through a Broker Price Opinion (BPO) and would not agree to sell the property for $315,000.00.

Original Petition at 3-4 (Document No. 1-2 at 11-12). Following that background recitation of "facts," Perez alleged three claims: (1) for violations of the Texas Constitution art. XVI § 50(a)(6)(A)-(Q); (2) for breach of contract; and (3) for equitable estoppel. The claim for violations of the Texas Constitution is based on Perez' allegations that the 2008 home equity loan he received, in the amount of $288,000.00, was invalid because the loan amount was based on an inflated appraised value of the property, and did not truly equate to eighty percent of the market value of the home, as is required for home equity loans under article XVI § 50 of the Texas Constitution. With respect to the breach of contract claim, Perez alleges that once an escrow account was required and established for payment of property taxes and insurance on the Property, the note should have been recalculated to incorporate the escrow amounts into the principal balance of the note. In this regard Perez alleges as follows:

> . . . . The Contract states that the expenditure of funds for escrow items shall become additional debt paid at the note rate. CHASE BANK N.A. is in violation of contract by requiring such a large payment, effectively more than doubling the monthly payment and placing the property at risk by creating such a large burden. CHASE BANK N.A. Mortgage was required to add the expenditure of escrow funds to the overall note and reamortize according to the terms of the Texas Home Equity Security Instrument.

Original Petition at 5 (Document No. 1-2 at 13). Finally, with respect to the equitable estoppel claim, Perez alleges that he was wrongfully denied a loan modification, and wrongfully disallowed

from conducting a short sale of the Property.   Based on that alleged wrongful conduct, Perez maintains that Defendants should be equitably estopped from pursuing foreclosure on the Property.

### A.      Violation of Section 50(a)(6) of the Texas Constitution

In his first claim, Perez argues that JPMorgan violated The Texas Constitution art. XVI § 50(a)(6)(A)-(Q) by assigning an appraisal value exceeding the 80% of fair market value rule, and therefore lacks authority to foreclose on the Property.  But, claims arising under Section 50(a)(6) of the Texas Constitution are subject to a four- year statute of limitations, *Priester v. JPMorgan Chase Bank, N.A.*, 708 F.3d 667, 674-76 (5th Cir.), *cert. denied*, 134 S.Ct. 196 (2013); *Taylor v. United States Bank N.A.*, No. H-13-3783, 2014 WL 1703936 *2-3 (S.D. Tex. Apr. 29, 2014), with a cause of action arising, and the limitations period beginning to run, when the loan closes.  *Priester*, 708 F.3d at 675-76.

Here, the current home equity loan, about which Perez complains, "closed" on August 26, 2008.  *See* Texas Home Equity Security Instrument, attached to Original Petition (Document No. 1-2 at 25-42).  This case was not filed by Perez until March 13, 2014, well beyond the four year limitations period applicable to claims under § 50(a) of the Texas Constitution.  Based on Perez' own allegations and the date the home equity loan was signed and "closed," Perez' claim for alleged violations of § 50(a) of the Texas Constitution is barred by limitations, and is subject to dismissal on that basis under FED. R. CIV. P. 12(b)(6).

### B.      Breach of Contract Claim

In his second claim, Perez complains that the escrow amounts required for taxes and insurance were excessively and unreasonably high, and that the terms of the Security Instrument required those amounts to be added to the note, and the note recalculated and re-amortized with those

amounts being included as part of a new principal balance.

Despite Perez' allegations that JPMorgan and MetLife did not abide by the terms of the Security Instrument in this regard, the Security Instrument itself, which Perez attached to his Original Petition, contains no such requirements. Instead, the Security Agreement provides that escrow items are *additional* amounts that are to be paid by the borrower, and not additional amounts that are to be included, though a re-calculation, in principal balance of the note. Sections 3 and 9 of the Security Instrument provide in this respect as follows:

> Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. . . . If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 to repay to Lender any such amount.
>
> *          *          *
>
> If . .. Borrower fails to perform the covenants and agreements contained in this Security Instrument . . . then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument . . . . Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Agreement. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

Texas Home Equity Security Instrument at 4, 7 (Document No. 1-2 at 28, 31). Nowhere in Section 3 or Section 9 is there any requirement that the Lender re-calculate and re-amortize the Note to include a Borrower's unpaid Escrow Items. Perez' allegations to the contrary do not state a plausible claim for breach of contract.

In addition, Perez' own allegations, which are to be taken as true in a Rule 12(b)(6) context, show that it was Perez himself who first breached the terms of the Security Instrument by failing to timely pay his property taxes on the Property, and by failing to make timely payments on the note.

Given that prior material breach, Perez cannot state a plausible breach of contract claim against JPMorgan or MetLife.  *Mustang Pipeline Co. v. Driver Pipeline Co.,* 134 S.W.3d 195, 196 (Tex. 2004) ("It is a fundamental principle of contract law that when one party to a contract commits a material breach of that contract, the other party is discharged or excused from further performance."); *Gulf Pipe Line Co. v. Nearen*, 138 S.W.2d 1065, 1068 (Tex. 1940) ("It is also elementary that a party to a contract who is himself in default cannot maintain a suit for its breach").

Given the terms of the Security Instrument, as well as Perez' own admissions of his failure to timely pay his property taxes, and his failure to make the payments required by the Note, Perez has not alleged a plausible breach of contract claim against JPMorgan and MetLife.[1]

C.    **Equitable Estoppel Claim**

In his last claim, Perez alleges that JPMorgan acted in bad faith by denying his requests for loan modifications and refusing his attempt to complete a short sale of the Property.   According to Perez, "JPMorgan should be barred from executing foreclosure under the principle of equitable estoppel due to wrongful denial of loan modification, and refusal to accept fair market value price for a short sale of property." Original Petition at 6 (Document No. 1-2 at 14).

"The essential elements of equitable estoppel are the following: (1) there must have been a false representation or concealment of material fact, (2) made with knowledge of the facts, (3) to the party without knowledge or the means of knowledge of those facts, (4) with the intention that it should be acted upon and (5) the party to whom it is made must have relied to his prejudice." *Nelson*

---

[1] While neither MetLife nor JPMorgan are clearly identified by Plaintiff in his Original Petition, it appears from the contents of Defendants' Motion to Dismiss that MetLife was/is the lender/holder of the note and JPMorgan is the loan servicer.  *See* Defendants' Motion to Dismiss (Document No. 4) at 1, n.1, 6.

*v. Jordan*, 663 S.W.2d 82, 87 (Tex. Civ. App. – Austin 1983, writ ref'd n.r.e.).  In the loan and/or mortgage context, "[a] mortgage servicer's or mortgagee's alleged promises of a loan modification do not give rise to an equitable estoppel or promissory estoppel claim unless there is an allegation or evidence that the servicer or mortgagee promised to reduce the oral representations into writing and failed to do so." *Lopez v. Sovereign Bank*, N.A., No. H-13-1429, 2014 WL 1315834 *9 (S.D. Tex. March 31, 2014).

Here, Perez' allegations in his Original Petition do not state a plausible claim for equitable estoppel.  He has not alleged that he was promised anything by JPMorgan or MetLife, and there are no allegations that he relied, to his detriment, on any representation or definable conduct of JPMorgan or MetLife.  *See Sullivan v. Leor Energy, LLC*, 600 F.3d 542, 549-550 (5th Cir. 2010) (upholding Rule 12(b)(6) dismissal of an equitable estoppel claim based on Plaintiff's failure to "allege reliance damages").  All he alleges is that he should have been allowed to conduct a short sale of the property and that he should have been given a loan modification.  Such allegations do not and cannot support any of the elements of an equitable estoppel claim.

## IV.    Conclusion and Recommendation

Based on the foregoing, and the conclusion that Plaintiff Paul Anthony Perez has failed to state a claim against Defendants JPMorgan Chase Bank N.A and MetLife Home Loans, LLC, the Magistrate Judge

RECOMMENDS that Defendant's Motion to Dismiss (Document No. 4) be GRANTED, and that Plaintiff's claims in his Original Petition (Document No. 1-2) for violations of 50(a)(6), breach of contract, and equitable estoppel all be DISMISSED pursuant to Rule 12(b)(6) for failure to state

a claim.

The Clerk shall file this instrument and provide a copy to all counsel and unrepresented parties of record. Within fourteen (14) days after being served with a copy, any party may file written objections pursuant to 28 U.S.C. 636(b)(1)(C), Fed. R. Civ. P. 72(b), and General Order 80-5, S.D. Texas. Failure to file objections within such period shall bar an aggrieved party from attacking factual findings on appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Ware v. King*, 694 F.2d 89 (5th Cir. 1982), *cert denied*, 461 U.S. 930 (1983); *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. 1982) (en banc). Moreover, absent plain error, failure to file objections within the fourteen day period bars an aggrieved party from attacking conclusions of law on appeal. *Douglass v. United Services Automobile Association*, 79 F.3d 1415, 1429 (5th Cir. 1996). The original of any written objections shall be filed with the United States District Clerk.

Signed at Houston, Texas, this 29th  day of July, 2014.

Frances H. Stacy
United States Magistrate Judge